IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ZO SKIN HEALTH, INC., a California corporation, | ) ) ) | Case No. _____ |
| Plaintiff, | ) ) | |
| vs. | ) ) | **COMPLAINT** |
| PAUL SIU, an individual, and JOHN DOE, an individual, | ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff, ZO Skin Health, Inc. ("ZOSH"), by and through its counsel of record, for its Complaint against Paul Siu and John Doe ("Defendants"), hereby states and alleges as follows:

**THE PARTIES**

1.      ZOSH is a California corporation registered to do business in the State of Nebraska, with its principal place of business located in Irvine, California, and its main distribution center located in Omaha, Nebraska.

2.      On information and belief, Paul Siu is an individual and his citizenship and/or principal places of business is located in West Palm Beach, Florida.

3.      On information and belief, John Doe is an individual and/or entity of unknown corporate form, and their citizenship and/or principal places of business is located in West Palm Beach, Florida.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, 28 U.S.C. § 1367 and 18 U.S.C. § 1964.  ZOSH's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims

arising under California and Nebraska state law are substantially related such that they form part of the same case or controversy under Article III of the United States Constitution.

4.     This Court has personal jurisdiction over Defendants because Defendants have expressly aimed their tortious activities toward the State of Nebraska, purposely availed themselves of the privilege of doing business in Nebraska, and engaged in significant contacts with Nebraska, including significant and regular sales, shipments, and distribution of products bearing ZOSH's trademarks in Nebraska and to Nebraska residents.   In addition, upon information and belief, the products at issue in this proceeding originated from ZOSH's distribution center located in Omaha, Nebraska. Defendants have engaged in tortious activities with the knowledge that ZOSH will be harmed by Defendants' actions in Nebraska.

5.     Given Defendants' significant activities in Nebraska as outlined herein, the exercise of jurisdiction over Defendants is proper.

6.     ZOSH ensures the quality of its products and policies that it trademarks through a network of Authorized Account Customers that operate throughout the United States.

7.     From 2017 to present, ZOSH has engaged in considerable sales through its Authorized Account Customers, totaling more than two hundred million in sales by said Authorized Account Customers.

8.     Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2)-(3), because Defendants are subject to personal jurisdiction in this judicial district and a substantial part of the events or omissions giving rise to the claims

2

occurred in this District.

## FACTUAL ALLEGATIONS
### Background of ZO Skin Health, Inc.

9.     ZOSH researches, develops, designs, manufactures, markets and sells scientifically formulated cosmeceutical products ("ZO Products").  ZO Products are regulated by the U.S. Drug and Food Administration ("FDA").

10.     Various ZO Products are medical grade products.

11.     Pursuant to FDA regulations, only licensed physicians are allowed to prescribe, recommend and sell these medical grade ZO Products.  All ZO Products pose a potential risk to individuals who have not sought a consultation from a licensed physician regarding ZOSH's recommendations for ZO Products and their skin type, and skin care protocols.

12.     As such, all ZO Products are exclusively sold through a network of licensed physicians which make up the Authorized Account Customers.

13.     ZOSH only adds licensed physicians to its network once the licensed physician consents to and signs ZOSH's Anti-Diversion Policy.

14.     The Anti-Diversion Policy prohibits any licensed physician, or anyone associated with the licensed physician, from selling ZO Products online.

15.     ZOSH has the exclusive right to sell ZO Products online.

16.     ZOSH devotes a significant amount of time, energy and resources toward protecting the value of the ZOSH brand, products, name and reputation.  By distributing ZO Products exclusively through these licensed physicians and its online marketplace, ZOSH is able to ensure the safety and satisfaction of consumers and safeguard the reputation and integrity of ZO Products and the ZOSH brand.

17.     In addition, to promote and protect the ZO Skin Health, Inc. brand, ZOSH has registered numerous trademarks with the United States Patent and Trademark Office, including but not limited to ZO and ZO Skin Health (collectively, the "ZO Trademarks").

18.     The registration for the ZO Trademarks are valid, subsisting and in full force and effect, and constitute prima facie evidence of the validity of the ZO Trademarks and of the registration of the ZO Trademarks, of ZOSH's ownership of the ZO Trademarks and ZOSH's exclusive right to use the ZO Trademarks in commerce in connection with the goods specified in the registrations.

19.     ZOSH actively uses, advertises, and markets all of the ZO Trademarks in commerce throughout the United States.

20.     Consumers and licensed physicians recognize the ZO Trademarks as being associated with cutting edge, medically advanced cosmeceutical products with unparalleled results.

21.     Because of the cutting edge, medically advanced technologies and results of ZO Products, consumers trust the ZO Skin Health, Inc. brand and associate the ZO Skin Health, Inc. name with high quality, scientifically formulated and advanced products.

22.     For the above stated reasons, the ZO Trademarks are widely recognized by the general consumer of the United States, and ZOSH is recognized as the source of products bearing the ZO Trademarks.

23.     Due to the superior quality and exclusive distribution of ZO Products, and because ZOSH is recognized as the source of these high quality products, the ZO Trademarks have considerable value.

24.     ZOSH's ability to exercise these quality controls is essential to the quality,

4

safety and integrity of the ZO Products, as well as the value of the ZO Trademarks and related intellectual property.

25.     By conducting all sales through licensed physicians and its exclusive online storefront, ZOSH maintains strict quality controls over its ZO Products.

26.     ZOSH requires the licensed physicians to adhere to ZOSH's policies, procedures and agreements ("ZO Policies").

27.     The ZO Policies govern the manner in which licensed physicians sell ZO Products.   To prevent unauthorized third-parties from acquiring and reselling ZO Products, the ZO Policies achieve objectives of setting prices, prohibiting discounted prices, issuing product protocols, define the guidelines for use of ZO Trademarks and copyrighted materials, and ensure that the seller relationships are consistent and value based across the supply chain.

28.     As part of the ZO Policies, licensed physicians are prohibited from selling ZO Products on any online platform, including third-party marketplaces such as eBay and Amazon.

29.     Various measures are taken to track the manner and quantity in which licensed physicians sell ZO Products.  These and other restrictions contained within the ZO Policies allow ZOSH to exercise strict quality controls over the ZO Products.  In the event that a quality issue occurs, ZOSH can readily identify the chemical supplier, facility, distributor and batch of the ZO Products and address any quality issues with parties immediately.  Unauthorized resellers pose a significant risk to ZOSH's quality controls, since ZOSH cannot trace the ZO Product back to the chemical supplier, facility and/or distributor, or determine if the item unauthorized resellers are selling are genuine ZO

Product, preventing ZOSH from issuing a necessary product recall.

30.     ZOSH performs various inspections of ZO Products prior to placing ZO Products into its supply chain, including but not limited to distributors and licensed physicians.   Those inspections, along with ZO Policies, ensure that ZO Products purchased by consumers are free from defect, damage or other issues by virtue of quality control that ZOSH is able to perform on the ZO Products.  The ZO Policies also set forth requirements relating to storage, handling, inspection, usage and prescription of the ZO Products.

31.     ZO Policies provide for inspection of ZO Products by distributors and licensed physicians for defects in packaging and product, which serves to ensure that end-user consumers receive genuine ZO Products in conformity with ZOSH's quality control standards.

32.     As part of the ZO Policies, ZOSH prohibits distributors and/or licensed physicians from relabeling, repackaging, modifying and/or tampering with ZO Products. Accompanying written information regarding the usage protocols of each ZO Product and/or administering instructions for medical grade ZO Products are provided to the licensed physicians.  In this way, ZOSH can ensure that end-user consumers receive genuine and safe products.  Licensed physicians must also familiarize themselves, and in some occasions receive certified training from the developer of ZO Products, Dr. Zien Obagi, so that they are able to provide a high level of medical care and customer service to consumers.

33.     ZOSH's quality control measures, including but not limited to, ZO Policies, are substantial and have been implemented to control the quality of products sold and

manufactured using the ZO Trademarks, which protects licensed physicians, consumers, and the value and good will associated with ZO Trademarks.

34.     ZOSH's quality control measures and requirements are material, as they are designed to protect consumers and prevent them from receiving poor quality products that may be damaging to their health.  Consumers would find it material and relevant to their purchasing decision to know whether a ZO Product they contemplated buying was sold by a licensed physician and subject to the ZO Policies and related quality control measures versus a product sold by an unauthorized reseller who is not subject to, and does not abide by, ZOSH's quality controls and over whom ZOSH is unable to exercise its quality controls.

35.     Licensed physicians are vetted by ZOSH to ensure that they meet ZOSH's standards and criteria for representing and selling ZO Products.  Among the criteria considered, ZOSH confirms the status of the physician's license, credit, sales history, market, business reviews and related information regarding the licensed physician's ability to adhere to ZO Policies and quality control requirements.

36.     ZOSH's overall strategy concerning quality control and protecting value and goodwill associated with the ZOSH brand are significant and material.  These measures ensure that consumers receive high quality, genuine and safe ZO Products from licensed physicians.

37.     ZOSH's ability to exercise quality controls over ZO Products sold turns on ZOSH's knowledge of which licensed physician is selling which products. To ensure ZOSH's awareness of this information, consumers must visit a location of one of ZOSH's Authorized Account Customers to receive a consultation. The products sold by ZOSH's

Authorized Account Customers are tracked by lot and batch numbers.  This allows ZOSH to control the distribution of ZO Products and address quality issues that may arise.

38.    Authorized Account Customers must also adhere to data security, accessibility, and privacy requirements.

39.    Authorized Account Customers must also use a tracking mechanism relating to their sale of ZO Products and also have a means to obtain consumer feedback/reviews. Authorized Account Customers must inform ZOSH of any negative product reviews or client experiences. This is a key part of the ZO Policies and ZOSH's quality-control efforts, as it gives ZOSH a method to address quality issues immediately; this is not possible with unauthorized resellers, such as Defendants.

40.    ZOSH's overall strategy concerning quality control and protecting value and goodwill associated with the ZO Skin Health, Inc. brand are significant and material. These measures ensure that consumers receive genuine, high quality ZO Products from licensed physician sources that adhere to the ZO Policies and related quality-control measures. Consumers purchasing ZO Products find it relevant to purchasing decisions to know that the product being purchased is from an Authorized Account Customer that adheres to ZOSH's quality controls.

41.    Additionally, ZO Products purchased from Authorized Account Customers come with a Limited Warranty ("ZO Warranty").

42.    The ZO Warranty warrants ZO Products against defects in manufacturing, workmanship, or materials under normal use and service for the applicable warranty period, subject to conditions contained therein. The warranty period ranges from one to ten years from the original date of purchase of a ZO Product by an end-user purchaser

from an Authorized Account Customer depending on the product.

43.     Under the ZO Warranty, a customer can receive a refund or replacement product if a ZO Product has a defect in manufacturing, workmanship, or materials under normal use and service for the applicable warranty period.

44.     The ZO Warranty is not available for ZO Products sold by unauthorized resellers, because ZOSH cannot ensure the quality of products sold by such unauthorized resellers. Unauthorized resellers, like Defendants, do not comply with ZOSH's quality controls. This ZO Warranty is a key component of genuine ZO Products, as consumers purchasing ZO Products with the ZO Warranty have assurances that they are receiving a high quality product supported by the ZO Warranty if an issue arises.

**Defendants Fraudulently Obtained Authorized Account Customer Status**

45.     Due to risks to consumers and reputational concerns associated with the illegal sale of products bearing the ZO Trademarks by unauthorized resellers, ZOSH tracks and polices the sale of its products online.

46.     In the course of monitoring unauthorized online sales of ZO Products, ZOSH has discovered products bearing the ZO Trademarks being illegally sold by Defendants.

47.     On information and belief, Defendants illegally sell products bearing the ZO Trademarks on Ebay and Amazon online marketplaces, and possibly other online marketplaces.

48.     ZOSH has not approved Defendants to sell ZO Products, because Defendants used fraudulent misrepresentations in order to obtain Authorized Account Customer status.  Therefore, Defendants do not comply with ZOSH's quality-control

measures and ZO Policies.

49.     Defendants used a licensed physician's medical license and misrepresented the physician's connection with the Defendants' practice.

50.     Defendants did so in order to open an Authorized Account with ZOSH and fraudulently obtain ZO Products in order to sell those ZO Products through third party retailers in violation of the Anti-Diversion Policy.

51.     Defendants used this physician's medical license without his consent or knowledge.

52.     Upon information and belief, John Doe is a licensed physician who also used his credentials to become an Authorized Account Customer and conspired with Paul Siu to divert the fraudulently obtained ZO Products to online marketplaces.

53.     Defendants also conduct their illegal sales on the Ebay and Amazon online marketplaces, and possibly other online marketplaces, which violates the quality controls implemented by ZOSH. This prevents ZOSH from addressing quality issues or negative reviews that arise out Defendants' illegal sales of products bearing the ZO Trademarks. It is also unclear how or where Defendants have stored products bearing the ZO Trademarks, which prevents ZOSH from determining if any such products are subject to recall or consumer safety information efforts.

54.     Defendants are infringing the ZO Trademarks by selling products bearing the ZO Trademarks that are not subject to, do not abide by, and interfere with ZOSH's quality controls and customer service requirements.

55.     Defendants' illegal conduct fails to meet the quality controls implemented by ZOSH, which harms the ZO Skin Health, Inc. brand's goodwill and also circumvents

safeguards intended to protect consumers. Because Defendants' illegal sales operate outside of ZOSH's quality controls, Defendants' products are materially different from genuine ZO Products. Thus, Defendants' products are not genuine ZO Products.

56.    Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to, and does create customer confusion, because customers who purchase products from Defendants believe they are purchasing genuine ZO Products, when in fact, they are not.

57.    Defendants' unauthorized sale of products bearing the ZO Trademarks infringes on the ZO Trademarks and diminishes their value.

58.    Defendants have sold and continue to sell products bearing the ZO Trademarks without ZOSH's consent.

59.    On information and belief, through the Ebay and Amazon online marketplaces, and possibly other online marketplaces, Defendants have advertised and marketed infringing products bearing the ZO Trademarks to consumers in Nebraska.

60.    On information and belief, Defendants have accepted and fulfilled significant orders of infringing products bearing the ZO Trademarks from consumers in Nebraska.

61.    On information and belief, Defendants have shipped significant amounts of infringing products bearing the ZO Trademarks to Nebraska.

62.    As described herein, genuine ZO Products purchased from ZOSH and its Authorized Account Customers that comply with ZOSH's quality controls come with the ZO Warranty.

63.    Because Defendants fraudulently gained Authorized Account Customer

11

status to obtain ZO Products, they are not Authorized Account Customers and do not comply with the related quality controls, the products they sell bearing the ZO Trademarks do not come with the ZO Warranty.

64.     Due to the lack of the ZO Warranty on Defendants' products, the products they sell bearing the ZO Trademarks are materially different from genuine ZO Products.

65.     Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to, and does, create customer confusion, because customers who purchase products from Defendants believe they are purchasing genuine ZO Products, when, in fact, they are not.

66.     Defendants' unauthorized sale of products bearing the ZO Trademarks infringes on the ZO Trademarks and diminishes their value.

67.     Defendants have sold and continue to sell products bearing the ZO Trademarks through the Ebay and Amazon online marketplaces, and possibly other online marketplaces, without ZOSH's consent.

68.     Defendants are engaging in false advertising by falsely representing that the products they sell come with the ZO Warranty.

69.     On information and belief, Defendants' unauthorized listings of products bearing the ZO Trademarks purport to be covered by the ZO Warranty; Defendants also represent that the unauthorized products sold bearing the ZO Trademarks are "new."

70.     To the contrary, products sold by Defendants bearing the ZO Trademarks do not come with the ZO Warranty. By making such inaccurate representations to consumers, Defendants are falsely advertising the products that they sell.

71.     On information and belief, Defendants have acquired ZO Products, in whole

12

or in part, by fraudulently obtaining ZOSH's Authorized Account Customer status for purposes of unlawfully infringing upon and materially damaging the value of the ZO Trademarks by reselling the products online.

72.    The ZO Policies and related quality controls prohibit ZOSH's Authorized Account Customers from selling ZO Products to third parties who intend to resell the products.

73.    By acquiring ZO Products by fraudulently obtaining Authorized Account Customer status for purposes of resale, Defendants are causing a breach of the agreement between ZOSH and Authorized Account Customers. Defendants are also interfering with ZOSH's agreements and business relationships. Defendants' tortious interference continues to this day.

74.    On information and belief, Defendants have willfully and knowingly made affirmative misrepresentations in order to obtain Authorized Account Customer status and have breached their agreements with ZOSH, so that Defendants can acquire ZO Products and unlawfully infringe on the ZO Trademarks by reselling those products.

**ZOSH Has Suffered Significant Harm Due to Defendants' Conduct**

75.    Defendants' unauthorized resale of products bearing the ZO Trademarks through unauthorized resellers has caused significant harm to the ZO Skin Health, Inc. brand.

76.    When a consumer receives one of Defendants' products from an unauthorized reseller that lacks the ZO Warranty, the consumer associates that negative experience with ZOSH and the ZO Skin Health, Inc. brand. Defendants' ongoing sale of unauthorized products bearing the ZO Trademarks causes substantial harm to the ZO

Skin Health, Inc. brand.

77.     ZOSH has suffered and will continue to suffer significant monetary harm as a direct result of Defendants' misconduct, including but not limited to loss of sales, damage to reputation, erosion of intellectual property rights, and damage to existing and prospective business relationships.

78.     ZOSH has suffered and will continue to suffer irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

79.     ZOSH is entitled to injunctive relief, because Defendants will continue to unlawfully resell products bearing the ZO Trademarks and infringe on the ZO Trademarks, causing continued irreparable harm to ZOSH's reputation, goodwill, relationships, intellectual property, and brand integrity.

80.     Defendants' conduct was intentional, willful, knowing, malicious, wanton, and in violation of applicable laws.

**FIRST CAUSE OF ACTION**
**Trademark Infringement**
**15 U.S.C. §§ 1114, 1125(a)(1)(a)**

81.     ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

82.     ZOSH is the owner of the ZO Trademarks.

83.     ZOSH has registered the ZO Trademarks with the United States Patent and Trademark Office.

84.     The ZO Trademarks are valid and subsisting trademarks in full force and effect.

85.     Defendants unlawfully, willfully, and knowingly used and continue to use the ZO Trademarks in interstate commerce for purposes of selling products bearing the ZO Trademarks without ZOSH's consent.

86.     The products sold by Defendants bearing the ZO Trademarks are not authorized for sale by ZOSH.

87.     The products sold by Defendants bearing the ZO Trademarks do not come with the ZO Warranty.

88.     ZOSH has established and implemented substantial and material quality controls with which genuine ZO Products must comply.

89.     ZOSH abides by these quality controls, and requires all of its Authorized Account Customers to abide by these quality controls.

90.     ZOSH's quality controls are material, as they protect consumers and prevent them from receiving low quality, damaged, and defective products.

91.     The products sold by Defendants bearing the ZO Trademarks are not subject to, do not abide by, and interfere with ZOSH's quality controls and customer service requirements.

92.     Since products sold by Defendants bearing the ZO Trademarks do not come with the ZO Warranty and are not subject to, do not abide by, and interfere with ZOSH's quality controls and customer service requirements, Defendants' products are materially different from genuine ZO Products.

93.     Thus, Defendants' products are not genuine ZO Products.

94.     Defendants' unauthorized sale of products bearing the ZO Trademarks interferes with ZOSH's quality controls and ability to exercise quality control over products

15

bearing the ZO Trademarks.

95.     Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers, because Defendants' conduct suggests that the products Defendants offer come with the ZO Warranty and are subject to and abide by ZOSH's quality controls, when, in fact, they do not.

96.     Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' conduct suggests that the products Defendants offer for sale are genuine ZO Products when, in fact, they are not.

97.     Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' conduct suggests that the products Defendants offer for sale are otherwise related to ZOSH when, in fact, they are not.

98.     Defendants' unauthorized use of the ZO Trademarks has infringed upon and materially damaged the value of the ZO Trademarks, and also cause significant damage to the ZO Skin Health, Inc. brand and ZOSH's business relationships.

99.     As a proximate result of Defendants' misconduct, ZOSH has suffered and continues to suffer immediate and irreparable harm. ZOSH has also suffered and continues to suffer damages, including but not limited to loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

100.   ZOSH is entitled to recover its damages caused by Defendants' infringement of the ZO Trademarks, and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

101.    ZOSH is entitled to injunctive relief under 15 U.S.C. § 1116, because it has no adequate remedy at law for Defendants' infringement; unless Defendants are permanently enjoined, ZOSH will suffer irreparable harm.

102.    ZOSH is entitled to enhanced damages and attorney fees under 15 U.S.C. § 1117(a) as this is an exceptional case, because Defendants willfully, intentionally, and maliciously infringed on the ZO Trademarks in bad faith.

### SECOND CAUSE OF ACTION
### False Advertising
### 15 U.S.C. § 1125(a)(1)(b)

103.    ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

104.    ZOSH is the owner of the ZO Trademarks.

105.    ZOSH has registered the ZO Trademarks with the United States Patent and Trademark Office.

106.    The ZO Trademarks are valid and subsisting trademarks in full force and effect.

107.    Defendants have willfully, intentionally, and knowingly used, and continued to use, the ZO Trademarks in interstate commerce for purposes of advertising, marketing, promoting, and selling Defendants' products bearing the ZO Trademarks without ZOSH's consent.

108.    Defendants' advertising, marketing, and promotional efforts regarding their products unlawfully use the ZO Trademarks, and has been disseminated to the relevant purchasing public, including Nebraska consumers.

109.    Defendants have used and continue to use the ZO Trademarks to falsely

advertise by implication that the products they sell come with the ZO Warranty when, in fact, they do not.

110.    ZO Products purchased from ZOSH and its Authorized Account Customers who comply with ZOSH's quality controls come with the ZO Warranty.

111.    ZOSH cannot exercise quality controls over products sold by unauthorized resellers, such as Defendants. Thus, products bearing the ZO Trademarks that are sold by unauthorized resellers who do not comply with ZOSH's quality controls do not come with the ZO Warranty.

112.    The products sold by Defendants bearing the ZO Trademarks are not authorized for sale by ZOSH.

113.    The products sold by Defendants bearing the ZO Trademarks do not come with the ZO Warranty.

114.    Defendants falsely advertise by implication that the products they sell bearing the ZO Trademarks come with the ZO Warranty. This representation is false, because the products sold by Defendants bearing the ZO Trademarks do not come with the ZO Warranty.

115.    Defendants' use of the ZO Trademarks in connection with unauthorized advertising, marketing, promotion, and sale of products bearing the ZO Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products, because it suggests that the products come with the ZO Warranty when, in fact, they do not.

116.    Defendants' use of the ZO Trademarks in connection with unauthorized advertising, marketing, promotion, and sale of products bearing the ZO Trademarks is

likely to cause confusion, cause mistake, or deceive because such use suggests that the products Defendants sell are genuine ZO Products that come with the ZO Warranty when, in fact, they are not.

117.   Defendants' use of the ZO Trademarks in connection with unauthorized advertising, marketing, promotion, and sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive because such use suggests that the products Defendants sell are sponsored by, authorized by, or otherwise connected with ZOSH when, in fact, they are not.

118.   Defendants' unauthorized and deceptive use of the ZO Trademarks is material and likely to influence consumers to purchase the products they sell, as consumers are likely to believe that products Defendants advertise using the ZO Trademarks are genuine ZO Products that come with the ZO Warranty when, in fact, they are not genuine ZO Products and do not come with the ZO Warranty.

119.   Defendants' unauthorized use of ZO Trademarks in advertising and the like infringes on the ZO Trademarks.

120.   As a proximate result of Defendants' misconduct, ZOSH has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

121.   ZOSH is entitled to recover its damages caused by Defendants' false advertising and infringement of the ZO Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

122.   ZOSH is entitled to injunctive relief under 15 U.S.C. § 1116, because it has no adequate remedy at law for Defendants' false advertising and infringement, and unless

Defendants are permanently enjoined, ZOSH will suffer irreparable harm.

123.    ZOSH is entitled to enhanced damages and attorney fees under 15 U.S.C.

§ 1117(a) as this is an exceptional case, because Defendants have willfully, intentionally,

maliciously, and in bad faith infringed on the ZO Trademarks.

**THIRD CAUSE OF ACTION**
**Unfair Competition**
**15 U.S.C. § 1125(a)**

124.    ZOSH hereby restates and incorporates by reference the allegations

contained in the preceding paragraphs as though set forth fully herein.

125.    ZOSH is the owner of the ZO Trademarks.

126.    ZOSH has registered the ZO Trademarks with the United States Patent and

Trademark Office.

127.    The ZO Trademarks are valid and subsisting trademarks in full force and

effect.

128.    Defendants have willfully, intentionally, and knowingly used, and continue

to use, the ZO Trademarks in interstate commerce for purposes of advertising, marketing,

promoting, and selling Defendants' products bearing the ZO Trademarks without ZOSH's

consent.

129.    The products Defendants advertise and sell bearing the ZO Trademarks are

not authorized for sale by ZOSH.

130.    The products Defendants advertise and sell bearing the ZO Trademarks do

not come with the ZO Warranty.

131.    ZOSH has established and implemented legitimate and substantial quality

controls covering and applicable to all genuine ZO Products.

132.   ZOSH abides by these quality controls and requires that all of its Authorized Account Customers abide by these quality controls.

133.   ZOSH's quality controls are material and significant, insofar as they protect consumers from receiving poor quality, damaged, and defective products.

134.   The products Defendants sell and advertise bearing the ZO Trademarks are not subject to, do not abide by, and interfere with ZOSH's quality controls and customer service requirements.

135.   Since the products Defendants sell and advertise bearing the ZO Trademarks are not subject to, do not abide by, and interfere with ZOSH's quality controls and customer service requirements, the products Defendants sell are materially different from genuine ZO Products.

136.   Since the products Defendants sell and advertise bearing the ZO Trademarks are not subject to, do not abide by, and interfere with ZOSH's quality controls and customer service requirements, the products Defendants sell are not genuine ZO Products.

137.   Defendants' unauthorized advertisement and sale of products bearing the ZO Trademarks interferes with ZOSH's quality controls and ability to exercise quality control over products bearing the ZO Trademarks.

138.   Defendants' unauthorized advertisement and sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers, because it suggests that the products Defendants offer are genuine ZO Products, that are sponsored by, authorized by, or other connected to ZOSH, and come with the ZO Warranty and are subject to and abide by ZOSH's quality controls when, in fact, they are

not.

139.  Defendants' unauthorized use of the ZO Trademarks has infringed upon and materially damaged the value of the ZO Trademarks and caused significant damage and harm to ZOSH's business relationships.

140.  As a proximate result of Defendants' misconduct, ZOSH has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

141.  ZOSH is entitled to recover its damages caused by Defendants' unfair competition and infringement of the ZO Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

142.  ZOSH is entitled to injunctive relief under 15 U.S.C. § 1116, because it has no adequate remedy at law for Defendants' false advertising and infringement, and unless Defendants are permanently enjoined, ZOSH will suffer irreparable harm.

143.  ZOSH is entitled to enhanced damages and attorney fees under 15 U.S.C. § 1117(a) as this is an exceptional case, because Defendants have willfully, intentionally, maliciously, and in bad faith infringed on the ZO Trademarks.

**FOURTH CAUSE OF ACTION**
**Trademark Dilution**
**15 U.S.C. § 1125(c)**

144.  ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

145.  ZOSH is the owner of the ZO Trademarks.

146.  ZOSH has registered the ZO Trademarks with the United States Patent and Trademark Office, and such registration is valid and incontestable pursuant to 15 U.S.C.

§ 1065.

147.   The ZO Trademarks are inherently distinctive and are valid and subsisting trademarks in full force and effect.

148.   ZOSH filed applications to register its ZO Trademarks with the United States Patent and Trademark Office as early as April 20, 2011, and the marks have been registered.  ZOSH has actively, continuously, and exclusively used and promoted its ZO Trademarks at all relevant times.

149.   ZOSH has expended substantial time, effort, money, and resources advertising and promoting ZO Products with the ZO Trademarks.

150.   ZOSH markets, advertises, and sells products using the ZO Trademarks throughout the United States, including in Nebraska.

151.   The ZO Trademarks represent the key means by which ZO Products are distinguished from others in the marketplace.

152.   The ZO Trademarks are famous and well recognized by consumers throughout the United States for ZOSH's product offerings, among other product offerings.

153.   Consumers recognize and associate the ZO Trademarks with high quality products.

154.   ZOSH has implemented legitimate and substantial quality controls that it requires all of its Authorized Account Customers to follow to protect the goodwill and consumer recognition associated with its ZO Trademarks.

155.   Due to the high quality, innovative features, durability, and dependability of the ZO Products and ZOSH's use of the ZO Trademarks, consumers trust the ZO

Trademarks and ZO Products.

156.   ZOSH is widely recognized as the designated source of goods bearing the ZO Trademarks.

157.   At all times relevant hereto, the ZO Trademarks have been famous, distinctive, and widely recognized marks by the consuming public.

158.   After the ZO Trademarks became famous, Defendants intentionally, willfully, and knowingly used and continues to use the ZO Trademarks in commerce for purposes of selling products bearing ZO Trademarks without ZOSH's consent.

159.   Products sold by Defendants bearing the ZO Trademarks do not come with the ZO Warranty, and are not subject to, do not abide by, and interfere with ZOSH's quality controls.

160.   Products sold by Defendants bearing the ZO trademark are materially different from the genuine ZO Products sold by ZOSH and its Authorized Account Customers.

161.   Because Defendants' products do not come with the ZO Warranty and are not subject to, do not abide by, and interfere with ZOSH's quality controls, consumers who purchase Defendants' products are more likely to receive a poor quality, damaged, or defective product, and are also more likely to have an unsatisfactory customer experience.

162.   Consumers who receive poor quality products from Defendants that do not come with the ZO Warranty associate that negative experience with ZOSH and the ZO Trademarks.

163.   Consumers who receive such poor quality products from Defendants submit

negative online reviews disparaging ZOSH and the ZO Trademarks. These negative reviews influence other consumers, and cause them to become less likely to purchase ZO Products and cause consumers to become less likely to trust products bearing the ZO Trademarks.

164.    As a result, Defendants' unauthorized, unlawful, and willful use of the ZO Trademarks has tarnished and diluted the ZO Trademarks.

165.    As a proximate result of Defendants' actions, ZOSH has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

166.    ZOSH is entitled to recover its damages caused by Defendants' dilution of the ZO Trademarks, and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

167.    ZOSH is entitled to injunctive relief under 15 U.S.C. § 1116, because it has no adequate remedy at law for Defendants' dilution of the ZO Trademarks, and unless Defendants are permanently enjoined, ZOSH will suffer irreparable harm.

168.    ZOSH is entitled to enhanced damages and attorney fees under 15 U.S.C. § 1117(a) as this is an exceptional case, because Defendants have willfully, intentionally, maliciously, and in bad faith diluted ZO Trademarks.

**FIFTH CAUSE OF ACTION**
**Intentional Interference with Contractual Relations**
**(California and Nebraska Law)**

169.    ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

170.    ZOSH has entered into valid and subsisting contracts with various third

25

parties, including but not limited to Authorized Account Customers and distributors of ZO Products.

171.    Defendants fraudulently obtained Authorized Account Customer status by forging documents and signatures on the ZOSH contracts.  As such, Defendants are not party to any of the contracts between ZOSH, on the one hand, and Authorized Account Customers and distributors of ZO Products, on the other hand.

172.    Defendants are aware of ZOSH's contracts with Authorized Account Customers and distributors.

173.    On information and belief, Defendants' acts have been designed to disrupt ZOSH's contracts with those Authorized Account Customers and distributors.

174.    Defendants' actions as described herein have caused a disruption in ZOSH's contractual relationships with its Authorized Account Customers and distributors.

175.    But for Defendants' tortious conduct and interference, ZOSH's contracts with its Authorized Account Customers and distributors would have been fully performed without breach or disruption.

176.    ZOSH has suffered damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**Unfair Competition**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**

177.    ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

178.    ZOSH has suffered injury in fact as a result of Defendants' wrongful conduct in the form of an invasion of legally protected interests that are concrete and particularized and actual as described herein.

179.   ZOSH has suffered economic injury insofar as the value of its ZO Trademarks have been diminished and/or diluted as a result of Defendants' wrongful conduct, ZOSH's reputation and goodwill has been harmed as a result of Defendants' wrongful conduct, and ZOSH has been deprived of sales and profits as a result of Defendants' wrongful conduct.

180.   ZOSH has suffered economic injury as a direct consequence of unfair and unlawful business practices and conduct by Defendants. Defendants' conduct is unlawful insofar as it constitutes trademark infringement, false advertising, federal unfair competition, trademark dilution, and intentional interference with contractual relations.  On information and belief, this conduct collectively constitutes a business practice of Defendants, and as a result of this practice, Defendants have received ill-gotten gains, including ZOSH's money and/or property. Defendants' conduct is unfair since such conduct unfairly infringes on ZOSH's legal rights and significantly threatens or harms competition in the marketplace in which ZOSH operates.

181.   ZOSH has suffered economic harm as a direct result of Defendants' unfair and unlawful competition in violation of Cal. Bus. & Prof. Code § 17200, et seq.

182.   ZOSH demands restitution in an amount to be proven at trial, in addition to injunctive relief enjoining Defendants from engaging in such unfair and unlawful business practices.

**SEVENTH CAUSE OF ACTION**
**Common Law Unfair Competition**
**(Nebraska Law)**

183.   ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

184.   ZOSH has extensively and continuously used and promoted its ZO Trademarks throughout the United States, including but not limited to the State of Nebraska.

185.   By virtue of ZOSH's extensive and continuous use and promotion of its ZO Trademarks, the ZO Trademarks have become well-known indicators of the origin and quality of ZOSH's products throughout the United States, including but not limited to the State of Nebraska, and are therefore entitled to trademark protection under the common law of the State of Nebraska.

186.   Defendants unlawfully, willfully, and knowingly used and continue to use the ZO Trademarks in commerce throughout the State of Nebraska for purposes of selling products bearing the ZO Trademarks without ZOSH's consent.

187.   The products sold by Defendants bearing the ZO Trademarks are not authorized for sale by ZOSH.

188.   The products sold by Defendants bearing the ZO Trademarks do not come with the ZO Warranty.

189.   ZOSH has established and implemented substantial and material quality controls with which genuine ZO Products must comply.

190.   ZOSH abides by these quality controls, and requires all of its Authorized Account Customers to abide by these quality controls.

191.   ZOSH's quality controls are material, as they protect consumers and prevent them from receiving low quality, damaged, and defective products.

192.   The products sold by Defendants bearing the ZO Trademarks are not subject to, do not abide by, and interfere with ZOSH's quality controls and customer

service requirements.

193.    Since products sold by Defendants bearing the ZO Trademarks do not come with the ZO Warranty and are not subject to, do not abide by, and interfere with ZOSH's quality controls and customer service requirements, Defendants' products are materially different from genuine ZO Products.

194.    Thus, Defendants' products are not genuine ZO Products.

195.    Defendants' unauthorized sale of products bearing the ZO Trademarks interferes with ZOSH's quality controls and ability to exercise quality control over products bearing the ZO Trademarks.

196.    Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers, because Defendants' conduct suggests that the products Defendants offer come with the ZO Warranty and are subject to and abide by ZOSH's quality controls, when, in fact, they do not.

197.    Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' conduct suggests that the products Defendants offer for sale are genuine ZO Products when, in fact, they are not.

198.    Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' conduct suggests that the products Defendants offers for sale are otherwise related to ZOSH when, in fact, they are not.

199.    Defendants' unauthorized use of the ZO Trademarks has infringed upon and materially damaged the value of the ZO Trademarks, and also cause significant

damage to the ZO Skin Health, Inc. brand and ZOSH's business relationships.

200.    As a proximate result of Defendants' misconduct, ZOSH has suffered immediate and irreparable harm. ZOSH has also suffered damages, including but not limited to loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

201.    Defendants' actions constitute unfair competition under the common law of the State of Nebraska, and entitle ZOSH to injunctive relief and further entitle ZOSH to recover its damages caused by Defendants' acts of unfair competition, and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

**EIGHTH CAUSE OF ACTION**
**Fraud In The Inducement**
**(Nebraska law)**

202.    ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

203.    ZOSH has extensively and continuously used and promoted its ZO Trademarks throughout the United States, including but not limited to the State of Nebraska.

204.    By virtue of ZOSH's extensive and continuous use and promotion of its ZO Trademarks, the ZO Trademarks have become well-known indicators of the origin and quality of ZOSH's products throughout the United States, including but not limited to the State of Nebraska, and are therefore entitled to trademark protection under the common law of the State of Nebraska.

205.    Defendants unlawfully, willfully, and knowingly used and continue to use the ZO Trademarks in commerce throughout the State of Nebraska for purposes of selling

products bearing the ZO Trademarks without ZOSH's consent.

206.   In order to obtain the ZO Products bearing the ZO Trademarks, Defendants made representations that a licensed physician practiced at their practice.  In furtherance of that representation, Defendants produced a medical license that belonged to said physician and represented and warranted that the physician would dispense the ZO Products in accordance with the ZO Policies and Anti-Diversion Agreement.

207.   In fact, the ZO Policies and Anti-Diversion Agreement were executed without the licensed physician's knowledge or consent.  As such, Defendants were not eligible to become Authorized Account Customers.

208.   Upon information and belief, John Doe is a licensed physician and used his credentials to become an Authorized Account Customers for the sole purpose of diverting ZO Products to online retailers.

209.   At the time Defendants made said misrepresentations to ZOSH, Defendants knew that the misrepresentations were false.

210.   Defendants knew that they were not eligible to obtain Authorized Account Customer status due to the lack of licensed physicians associated with their endeavor and their intent to divert ZO Products.  As such, Defendants were not eligible to purchase ZO Products to dispense or sell to customers.   As a result, Defendants made misrepresentations to ZOSH in order to obtain Authorized Account Customer status and the ability to purchase ZO Products.

211.   ZOSH relied upon this misrepresentations regarding a licensed physician's association with Defendants practice in determining the Defendants were eligible for Authorized Account Customer status.

212.   ZOSH relied upon John Doe's misrepresentations that he would not divert ZO Products to online marketplaces.

213.   Defendants' unauthorized use of the ZO Trademarks has infringed upon and materially damaged the value of the ZO Trademarks, and also cause significant damage to the ZO Skin Health, Inc. brand and ZOSH's business relationships.

214.   As a proximate result of Defendants' misconduct, ZOSH has suffered immediate and irreparable harm. ZOSH has also suffered damages, including but not limited to loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

215.   Defendants' actions constitute fraud under the common law of the State of Nebraska, and entitle ZOSH to injunctive relief and further entitle ZOSH to recover its damages caused by Defendants' acts of fraud, and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

**NINTH CAUSE OF ACTION**
**Account Stated**
**(Nebraska law)**

216.   ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

217.   Defendants' fraudulently induced ZOSH into entering a contract which enabled Defendants to purchase ZO Products from ZOSH.

218.   On or about February 4, 2020, ZOSH sold ZO Products to Defendants.

219.   ZOSH delivered the products and invoice to Defendants.

220.   Defendants never objected to the invoice nor disputed the validity of the invoice.

221.   Despite Defendants' acceptance of the invoice, Defendants failed to remit payment pursuant to the invoice.

222.   Defendants materially breached their obligations pursuant to the terms of sale by failing to pay the invoice and/or return the ZO Product.

223.   As a result of Defendants' breach, ZOSH has suffered damages.  As such, ZOSH should be compensated for these damages.

**TENTH CAUSE OF ACTION**
**Common Law Trademark Infringement**
**(California and Nebraska law)**

224.   ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

225.   ZOSH has extensively and continuously used and promoted its ZO Trademarks throughout the United States, including but not limited to the States of California and Nebraska.

226.   By virtue of ZOSH's extensive and continuous use and promotion of its ZO Trademarks, the ZO Trademarks have become well-known indicators of the origin and quality of ZOSH's product throughout the United States, including but not limited to the States of California and Nebraska, and are therefore entitled to trademark protection under the common law of the States of California and Nebraska.

227.   Defendants unlawfully, willfully, and knowingly used and continue to use the ZO Trademarks in commerce throughout the States of California and Nebraska for purposes of selling products bearing the ZO Trademarks without ZOSH's consent.

228.   The products sold by Defendants bearing the ZO Trademarks are not authorized for sale by ZOSH.

229.    The products sold by Defendants bearing the ZO Trademarks do not come with the ZO Warranty.

230.    ZOSH has established and implemented substantial and material quality controls with which genuine ZO Products must comply.

231.    ZOSH abides by these quality controls, and requires all of its Authorized Account Customers to abide by these quality controls.

232.    ZOSH's quality controls are material, as they protect consumers and prevent them from receiving low quality, damaged, and defective products.

233.    The products sold by Defendants bearing the ZO Trademarks are not subject to, do not abide by, and interfere with ZOSH's quality controls and customer service requirements.

234.    Since products sold by Defendants bearing the ZO Trademarks do not come with the ZO Warranty and are not subject to, do not abide by, and interfere with ZOSH's quality controls and customer service requirements, Defendants' products are materially different from genuine ZO Products.

235.    Thus, Defendants' products are not genuine ZO Products.

236.    Defendants' unauthorized sale of products bearing the ZO Trademarks interferes with ZOSH's quality controls and ability to exercise quality control over products bearing the ZO Trademarks.

237.    Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers, because Defendants' conduct suggests that the products Defendants offer come with the ZO Warranty and are subject to and abide by ZOSH's quality controls, when, in fact, they do not.

238. Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' conduct suggests that the products Defendants offer for sale are genuine ZO Products when, in fact, they are not.

239. Defendants' unauthorized sale of products bearing the ZO Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' conduct suggests that the products Defendants offer for sale are otherwise related to ZOSH when, in fact, they are not.

240. Defendants' unauthorized use of the ZO Trademarks has infringed upon and materially damaged the value of the ZO Trademarks, and also caused significant damage to the ZO Skin Health, Inc. brand and ZOSH's business relationships.

241. As a proximate result of Defendants' misconduct, ZOSH has suffered immediate and irreparable harm. ZOSH has also suffered damages, including but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

242. Defendants' actions constitute trademark infringement under the common law of the States of California and Nebraska, and entitle ZOSH to injunctive relief and further entitle ZOSH to recover its damages caused by Defendants' infringement of the ZO Trademarks, and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

## ELEVENTH CAUSE OF ACTION
## FEDERAL CIVIL RICO, 18 U.S.C. § 1962(c)

243. ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

244.    Defendants violated RICO and ZOSH was injured as a result.

245.    Defendants are a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

246.    Defendants violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

247.    The Enterprise.  Defendants constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) and engaged in the conduct of their affairs through a continuing pattern of racketeering activity (the "Enterprise").

248.    The Enterprise has engaged in, and Defendants' activities have affected, interstate commerce.

249.    Pattern of Racketeering Activity.  Defendants, who are people associated with, or employed by, the Enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5) and 1962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the Enterprise.  Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

250.    Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below.  Defendants committed at least two such acts or else aided and abetted such acts.

251.    The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims

36

and method of commission.  Further, the acts of racketeering by Defendants have been continuous.  There was repeated conduct during a period of time beginning in approximately early 2018 and continuing to the present, and there is a continued threat of repetition of such conduct.

252.   The Enterprise, as alleged herein, was not limited to the predicate acts and extended beyond the racketeering activity.  Rather, it existed separate and apart from the racketeering activity for the legitimate business purpose of supplying products to consumers.  Defendants have had and do have, upon information and belief, legitimate business plans outside of the pattern of racketeering activity.

253.   ZOSH specifically alleges that Defendants participated in the operation and management of the Enterprise by overseeing and coordinating the commission of multiple acts of racketeering as described below.

254.   Predicate Act: Use of Mails and Wires to Defraud Consumers in Violation of 18 U.S.C. § 1341 and 1343.  Defendants committed acts constituting indictable offenses under 18 U.S.C. §§ 1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud consumers or to obtain money from consumers by means of false or fraudulent pretenses, representations or promises.  For the purpose of executing their scheme or artifice, Defendants caused delivery of products bearing the ZO Trademarks by the U.S. mails or by private or commercial interstate carriers, or received such therefrom.  Defendants also transmitted or caused to be transmitted by means of wire communications and transfers in interstate commerce various writings, signs, signals and money.  The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of

business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

255.   Defendants carried out their scheme in different states and could not have done so unless they used the U.S. mails or private or commercial instate carriers or interstate wires. In furtherance of the scheme alleged herein, Defendants communicated with customers in furtherance of the scheme to defraud customers. These communications and transfers were typically transmitted by wire and/or through the United States mails or private or commercial carriers.

256.   Specifically, Defendants used wire and/or U.S. mail or private or commercial carriers to distribute products bearing the ZO Trademarks for the purpose of continuing their fraudulent scheme. Defendants communicated with various consumers using wire and/or U.S. mail or private or commercial carriers.

257.   Defendants also caused various consumers to transmit monies by wire across the United States.

258.   Consumers reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications, and ZOSH has been damaged as a direct and proximate result of Defendants' participation in the Enterprise, as alleged herein.

259.   Continuity of Conduct. Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured ZOSH and other market participants, constituted a continuous course of conduct spanning a period from approximately early 2017 to present, which was intended to obtain money through false

representations, fraud, deceit, and other improper and unlawful means.  Therefore, said violations were part of a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5).

260.   Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. § 1962(c).

261.   The unlawful actions of Defendants have directly, illegally, and proximately caused and continue to cause injuries to ZOSH and its business.  ZOSH seeks an award of damages in compensation for, among other things, lost profits.

262.   ZOSH accordingly seeks an award of three time the damages it sustained, and the recovery of reasonable attorney fees and costs of investigation and litigation, as well as any other relief authorized by statute.

## TWELFTH CAUSE OF ACTION
## CONSPIRACY TO VIOLATE FEDERAL CIVIL RICO § 18 U.S.C. § 1962(d)

263.   ZOSH hereby restates and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

264.   In violation of 18 U.S.C. § 1962(d), Defendants, each of them, knowingly, willfully and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged above.

265.   The conspiracy commenced as early as 2018 and is ongoing.

266.   The conspiracy's purpose was to divert sales from ZOSH to their own benefit and to facilitate the payment of bribes in an effort to defraud consumers and

ZOSH.

267.   Each Defendant committed at least one overt act in furtherance of such conspiracy.  These acts in furtherance of the conspiracy included, misleading consumers as to the origin and authenticity of the products bearing the ZO Trademarks as described above.

268.   Even if some Defendants did not agree to harm ZOSH specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to ZOSH was a reasonably foreseeable consequence of Defendants' actions.

269.   ZOSH has been injured and continues to be injured in its business and property by Defendants' conspiracy in violation of 18 U.S.C. § 1962(d).  The unlawful actions of Defendants, and each of them, have directly, illegally and proximately caused and continue to cause injuries to ZOSH in its business or property. ZOSH seeks an award of damages in compensation for, among other things, the lost profits suffered by ZOSH. ZOSH further seeks an award three times the damages it sustained, and the recovery of reasonably attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

**JURY DEMAND**

ZOSH makes a jury demand consistent with Federal Rule of Civil Procedure 38.

**REQUEST FOR PLACE OF TRIAL**

Pursuant to Nebraska Civil Rule 40.1(b), ZOSH requests the jury trial take place in Omaha, Nebraska.

## PRAYER FOR RELIEF

WHEREFORE, ZO Skin Health, Inc. respectfully requests that the Court enter judgment in its favor against Defendants Paul Siu and John Doe on Causes of Action One through Twelve as set forth above, and grant the following relief:

A.      Judgment in favor of ZOSH and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.      That a permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)      Prohibiting the Enjoined Parties from advertising or selling, via the internet or otherwise, all ZO Products;

ii)     Prohibiting the Enjoined Parties from using the ZO Trademarks in any manner, including advertising on the Internet;

iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all ZO Products as well as any products bearing the ZO Trademarks;

iv)     Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to

any products sold by them which contain the ZO Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendant has sold bearing this trademark;

v)     Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any ZO Products, or the ZO Trademarks;

vi)     Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any uses of the ZO Trademarks which associate ZO Products or the ZO Trademarks with the Enjoined Parties or the Enjoined Parties' website;

vii)     Requiring the Enjoined Parties to take all action to remove unauthorized uses of the ZO Trademarks from the Internet, including from the websites www.ebay.com and www.amazon.com, along with any other third-party online marketplaces that Defendant may have utilized;

C.     An award of attorney fees, costs, and expenses; and

D.     Such other and further relief as the Court deems just, equitable, and proper.

Dated this 25th day of March, 2020.

ZO Skin Health, Inc., a California corporation, Plaintiff

By:   /s/ Heather (Voegele) Anson
Heather (Voegele) Anson, #22731
Brenda K. Smith, #23641
Dvorak Law Group, LLC
9500 W. Dodge Rd., Ste. 100
Omaha, NE  68114
402-934-4770 (telephone)
402-933-9630 (facsimile)
hvoegele@ddlawgroup.com
bsmith@ddlawgroup.com

Attorneys for Plaintiff.